IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Shayla Brown and Michael Brown,

        Plaintiffs,

v.

        Case No. 1:22-cv-215-MLB

United States of America,

        Defendant.

_____/

**OPINION & ORDER**

Plaintiffs Shayla Brown and Michael Brown, husband and wife, sued the United States under the Federal Torts Claims Act ("FTCA") for negligence and negligent training arising from an injury Shayla Brown suffered at the Atlanta Airport. (Dkt. 1.) For the reasons set forth below, the Court grants the United States's motion to dismiss Shayla Brown's negligent training claim and all of her husband's claims.

**I.    Background**

On February 10, 2022, Shayla Brown was going through security at the Atlanta airport. (Dkt. 1 ¶ 9.) A federal agent in the area threw a hard object to an explosive detection dog she was handling at the time.

(Dkt. 1 ¶ 9.) The object hit Shayla Brown in the right eye, causing pain, swelling, impaired vision, and a headache. (Dkt. 1 ¶ 9.) She received first aid at the airport before flying to Washington, D.C. (Dkt. 1 ¶¶ 10, 12.)

Shayla Brown sought additional medical treatment. (Dkt. 1 ¶¶ 14-18.) An ophthalmologist found blunt trauma to her right eye, distortions in her vision, retinal tears, and mobile vitreous opacity consistent with vitreous separation. (Dkt. 1 ¶ 15.) Another doctor diagnosed her with posterior vitreous degeneration and retinal tears. (Dkt. 1 ¶ 18.) She received multiple rounds of laser treatment but still experiences distortions in her vision. (Dkt. 1 ¶¶ 15-17, 20.) Both she and her husband missed work as a result of her injury. (Dkt. 1 ¶ 19.)

Shayla Brown filed an administrative claim with TSA. (Dkt. 1 at 23.) She and her husband then sued the United States under the Federal Torts Claims Act for negligence and negligent training. (Dkt. 1.) Her husband seeks to recover for lack of consortium. (Dkt. 1 ¶ 24.) The United States moves to dismiss, arguing (1) both Plaintiffs' negligent training claims are barred by the discretionary function exception, and (2) the Court lacks subject matter jurisdiction over Michael Brown's

claims because he failed to exhaust his administrative remedies. (Dkt. 9 at 8.)

## II. Standard of Review

A motion under Fed. R. Civ. P. 12(b)(1) challenges the Court's subject matter jurisdiction. "A motion to dismiss for lack of subject matter jurisdiction ... can be based upon either a facial or factual challenge to the complaint." *McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). "A 'facial attack' on the complaint 'require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [their] complaint are taken as true for the purposes of the motion.'" *Id.* A factual attack, however, challenges the underlying facts supporting the Court's jurisdiction. *Odyssey Marine Exploration, Inc. v. Unidentified Shipwrecked Vessel*, 657 F.3d 1159, 69 (11th Cir. 2011). When evaluating a factual attack, "the district court is not obligated to take the allegations in the complaint as true." *Id.* Instead, the Court "may consider extrinsic evidence such as deposition testimony and affidavits." *Id.* And from this evidence, the Court may

"independently weigh the facts, and is not constrained to view them in the light most favorable to the non-movant." *Id.*

## III. Discussion

As a general principle, the United States "may not be sued without its consent." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). With the FTCA, however, the federal government waived its immunity for some actions. The FTCA states that a person may sue the United States "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 42 U.S.C. § 1346(b)(1). But Plaintiffs' negligent training claims and Michael Brown's claims exceed the scope of the FTCA's waiver.

### A. The Discretionary Function Exception Bars Plaintiffs' Negligent Training Claims

Plaintiffs claim the United States is negligent for failing to train the TSA Agent responsible for handling the dog to not throw objects to the dog while in a crowded area. The United States claims it has not waived sovereign immunity for Plaintiffs' negligent training claims. (Dkt. 9 at 8-15.) Specifically, the United States argues that, based on the

allegations in the complaint, the FTCA's discretionary function exception applies, and the Court lacks subject matter jurisdiction. (Dkt. 9 at 11.) So, the United States's motion is a facial challenge under Rule 12(b)(1). On a facial challenge to subject-matter jurisdiction, the Court limits its review to the complaint's allegations and views those allegations in the light most favorable to Plaintiff. *Brignac v. United States*, 239 F. Supp. 3d 1367, 1373 (N.D. Ga. 2017).

"When the United States, if a private person, would be liable to a claimant, the FTCA provides a limited waiver of sovereign immunity to permit imposing liability on the government for an injury caused by the negligent or wrongful act or omission of any government employee who is acting within the scope of his office or employment." *Reed v. U.S. Postal Service*, 288 F. App'x 638, 639 (11th Cir. 2008); U.S.C. § 1346(b)). The United States, however, does not waive sovereign immunity for claims arising from "the exercise or performance or the failure to exercise or perform a discretionary function or duty." 28 U.S.C. § 2680(a).

The Court uses a two-prong test to determine whether this so-called "discretionary function exception" applies. *United States v. Gaubert*, 499 U.S. 315, 322 (1988). The first prong asks whether the challenged

conduct involves "an element of judgment or choice." *Id.* The second prong asks whether the judgment is grounded in considerations of public policy because "the purpose of the exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy […]" *Id.* at 323. "At the pleading stage, [Plaintiff] must allege a plausible claim that falls outside the discretionary function exception." *Douglas v. United States.*, 814 F.3d 1268, 1276 (11th Cir. 2016). If the discretionary function exception applies, the Court lacks subject-matter jurisdiction over the claim. *Moore v. United States*, 2014 WL 949985, at *4 (N.D. Ga. Mar. 11, 2014).

### 1. Dog Handler Training is Discretionary in Nature

An act is discretionary in nature unless "a federal statute, regulation or policy specifically prescribes a course of action for an employee to follow." *OSI, Inc. v. United States*, 285 F.3d 947, 952 (11th Cir. 2002)). Here, Plaintiffs identify no federal statute, regulation, or course of action TSA was required to follow in the training of dog handlers. Rather, referencing the TSA website, Plaintiffs state that "United States Federal Dog Handlers receive anywhere from 11 to 16 weeks of training at a state-of-the-art facility in San Antonia, Texas.

6

Upon returning to their work site, United States Government Federal Dog Handlers receive additional training to familiarize themselves with their work site." (Dkt. 1 ¶ 34.) This merely provides that dog handlers receive training. Nothing on the website establishes guidelines for how TSA must train its dog handlers or provides any requirements as to what training must include. (Dkt. 1 at 31-33.) *See Rodriguez-Rivera v. United States*, 2012 WL 5266061, at *6 (M.D. Fla. Oct. 24, 2012) (Plaintiff's general allegation that the "military failed to follow the mandated procedures for PDHA," without citing any specific provision of the PDHA, not sufficient to escape the discretionary function exception.)

Plaintiffs also cite 49 U.S.C. § 114. (Dkt. 11 at 2.) But that statute only sets the basic structure and mandate of TSA. Plaintiffs argue it requires TSA to "carry out workforce training and development programs for all security screening personnel. The TSA is also tasked with inspection and compliance which includes the integrity, efficiency, and effectiveness of the agency's workforce." (Dkt. 11 at 2.) Again, this just means the statute requires the TSA's Administrator to do things like hire and train personnel to provide security at airports, develop standards for hiring and retention, and otherwise oversee the agency's operation. *See*

7

*e.g.,* 49 U.S.C. § 114(d). These broad mandates do not prescribe a specific training protocol or course of action for dog handlers or those who train them. *See Kennewick Irr. Dist. v. United States*, 880 F.2d 1018, 1026 (9th Cir. 1989) ("A general statutory duty" does not allow plaintiffs to escape the discretionary function exception.)

Plaintiffs have not identified "a federal statute, regulation or policy [that] specifically prescribes a course of action for an employee to follow." *OSI, Inc.,* 285 F.3d at 952. The decision about what type of training TSA provides its dog handlers satisfies the first prong of the discretionary function exception.

### 2. Dog Handler Training Is Susceptible to Policy Analysis

In assessing the second prong, "[t]he focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis. If the decision could objectively be made on policy grounds within the discretion afforded the decision maker, then we presume that the act was grounded in policy whenever that decision is employed." *Cosby v. U.S. Marshals Serv.*, 520 F. App'x 819, 821 (11th Cir. 2013). The United States argues the training

of dog handlers is subject to policy analysis because, for example, "the public-safety-driven desire to provide the most comprehensive canine training course possible must be balanced against the economic costs of doing so, as well as other priorities of TSA." (Dkt. 9 at 14.)

The Eleventh Circuit has not determined whether negligent training claims—even outside the context of explosive detection dogs—are barred by the second prong of the discretionary function exception. But other circuits, and courts within the Eleventh Circuit, have held that they are. *See, e.g., Burkhart v. Washington Metro Area Transit Auth.*, 112 F.3d 1207, 1217 (D.C. Cir. 1991) (Training of public transit employees falls within the discretionary function exception); *Gager v. United States*, 149 F.3d 918, 921-22 (9th Cir. 1998) (decision to not train USPS employees in bomb detection services barred by discretionary function exception); *Stout v. United States*, 721 F. App'x 462, 467 (6th Cir. 2018) ("the [discretionary function] exception bars [negligent training or negligent supervision] claims."); *Dorsey v. Relf*, 559 F. App'x 401, 403 (5th Cir. 2014) (affirming dismissal of negligent training claim under the discretionary function exception); *Echevarria-de-Pena v. United States*, 2013 WL 616932, at *4 (S.D. Fla. Feb. 19, 2013)

9

("Plaintiff's claim based upon the alleged negligent training of employees also falls within the ambit of the discretionary function exception."); *Starnes ex rel. AS v. United States*, 2007 WL 5238398 at \*6 (S.D. Fla. May 15, 2007) ("The decision as to what training to provide, and how much time to allocate to each topic, involves choice and judgment, and is grounded in considerations of public policy."); *Rodriguez-Rivera,* 2012 WL 5266061 at \*6 (dismissing negligent training claim under the discretionary function exception.)[1] And the only other court to consider the precise issue here, determined the TSA's training of dog handlers falls "squarely" within the discretionary function exception, albeit with little analysis. *See McSwain v. United States*, 2017 WL 901722 at \*3 (D. Nev. Mar. 7, 2017).

---

[1] The Court is aware of only one decision within this circuit that allowed a negligent training claim to proceed under the FTCA. *See Salter v. United States*, 853 F. Supp. 389, 392-93 (M.D. Ala. 1994). The plaintiff in that case claimed the United States negligently trained him in the use of pesticides to fight boll weevils. *Id.* To avoid the discretionary function exception, the plaintiff cited specific training regulations the government failed to follow, specifically "a strict policy of training field workers . . . in accordance with the directions and warnings provided by the pesticide manufacturers on the pesticide labels." *Id.* Plaintiffs have failed to do that here, thus distinguishing *Salter*.

The Court agrees with these cases. Creating a training program for dog handlers "requires consideration of fiscal constraints, public safety, the complexity of the task involved, the degree of harm a wayward employee might cause, and the extent to which employees have deviated from accepted norms in the past." *Burkhart*, 112 F.3d at 1217. Such decisions involve the exercise of political, social, or economic judgment. *Id*. The decision about what type of training TSA provides thus satisfies the second prong of the discretionary function exception.[2]

---

[2] Plaintiffs cite *O'Toole v. United States*, 295 F.3d 1029, 1037 (9th Cir. 2002) and *Marlys Bear Medicine v. United States ex rel. Secretary of Dept. of Interior*, 241 F.3d 1208, 1215 (9th Cir. 2001) to argue otherwise. *O'Toole*, however, involved the United States's decision to forgo necessary maintenance to an irrigation system, thus letting the system harm neighboring land. The Court determined the decision not to do something required to keep property safe was not a decision susceptible to policy choices. *See* 295 F.3d at 1037. That analysis is not helpful here. How TSA decides to train dog handlers who operate in diverse environments throughout the United States is totally different than a decision not to maintain a decrepit irrigation system in a single location. Similarly, *Marlys Bear Medicine*, involved the United States failure to enforce safety measures in a government logging contract. Because the contract required the Government to enforce specific OSHA and Department of the Interior regulations, the Ninth Circuit found the decision to not enforce the contract was not grounded in policy. *See* 241 F.3d at 1216-17. However, Plaintiffs here do not allege TSA had specific safety measures that it failed to enforce. This is not a case in which the United States failed to provide training (or failed to do anything) it was otherwise required to do.

11

## B. Plaintiff Michael Brown Has Not Exhausted His Administrative Remedies

The FTCA only waives the Government's sovereign immunity when plaintiffs have exhausted their administrative remedies. 28 U.S.C. § 2675(a). "The FTCA requires that *each claim* and *each claimant* meet the prerequisites for maintaining a suit against the government. Thus, in multiple claimant actions under the FTCA, each claimant must *individually* satisfy the jurisdictional prerequisite of filing a proper claim." *See Turner ex rel. Turner v. United States*, 514 F.3d 1194, 1200 (11th Cir. 2008) (no jurisdiction over parents' loss of consortium claim based on the negligent medical treatment of their son when the parents were not listed as claimants on the son's administrative claim form). If a plaintiff fails to exhaust their administrative remedies, the Court lacks jurisdiction to hear the claim. *Dalrymple v. United States*, 460 F.3d 1318, 1324 (11th Cir. 2006).

Plaintiffs allege Shayla Brown brought an administrative claim with TSA. (Dkt. 1 at ¶ 6, 21-26.) They do not allege Michael Brown ever filed a complaint with TSA or that Shayla Brown listed him on her complaint.

Plaintiffs admit "the specifics of Michael Brown's claims were not submitted to the agency in the first and second claims." (Dkt. 11 at 2.) Yet, Plaintiffs assert that "the specifics of Michael Brown's claim were submitted in the final demand sent to TSA on December 29, January 9, and January 10. (Dkt. 11 at 2.) The exhibit Plaintiffs cite in support of that assertion is not attached to the response, and the Court is unsure what Plaintiffs mean by "the final demand." The FTCA requires Michael Brown to submit his claim for loss of consortium to TSA as a claim – not as a fact alleged in the complaint or supported by some exhibit. He cannot free ride on his wife's administrative claim but rather must act for himself. *See, e.g., Walker v. United States,* 471 F. Supp. 38, 42 (M.D. Fla. 1978), *aff'd,* 597 F.2d 770 (5th Cir. 1979) ("[O]ne spouse may not presume that his or her own independent claim is automatically raised or implied in the administrative claim of the other spouse."); *Kruger v. United States*, 686 F. Supp. 2d 1333, 1336-37 (N.D. Ga. 2010) ("if a proposed new plaintiff seeks to add claims for injuries that were not previously alleged in the original administrative claims, then those new claims must first be administratively exhausted); *Boatwright v. United States*, 2007 WL 9702382, at *1 (S.D. Ga. Feb. 7, 2007) (no jurisdiction

13

over wife's loss of consortium claim where "[t]he administrative claim, which is signed only by [Husband], lists only [Husband] as a claimant and provides no hint of Plaintiffs' [Husband's and Wife's] intention to bring loss of consortium claims"). Because Plaintiffs have not alleged Michael Brown's claim for loss of consortium was part of the original TSA claim or was independently filed with TSA, this Court lacks jurisdiction over his claims.

### IV. Conclusion

As the Court lacks subject matter jurisdiction, United States's partial Motion to Dismiss the Complaint (Dkt. 9) is **GRANTED**. This case will proceed only as to Shayla Brown's negligence claim in Count I.

**SO ORDERED** this 4th day of November, 2022.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE